BONNIE CRUICKSHANK-WALLACE
WILLIAM WALLACE                          *Plaintiffs pro se*
10 Crestview Dr.
Parkesburg, PA 19365
610-857-4934
*will21921@yahoo.com*

| | |
|---|---|
| BONNIE CRUICKSHANK-WALLACE : | UNITED STATES DISTRICT COURT |
| and : | FOR THE EASTERN DISTRICT OF |
| WILLIAM WALLACE : | PENNSYLVANIA |
| 10 Crestview Drive : | |
| Parkesburg, PA 19365 : | |
| *pro se* Plaintiffs : | Civil Action No. |
| : | |
| *v.* : | **JURY TRIAL DEMANDED** |
| CNA FINANCIAL CORPORATION : | |
| 333 South Wabash Ave. : | |
| Chicago, Illinois 60604 : | |
| Defendant : | |

## COMPLAINT

Plaintiffs *pro se* BONNIE CRUICKSHANK-WALLACE (Mrs. Wallace) and husband WILLIAM WALLACE (Mr. Wallace) (together "Wallaces") reside in Chester County, Pennsylvania and hereby bring their Complaint against Defendant CNA FINANCIAL CORP. ("CNA") a Delaware corporation domiciled in Chicago, Illinois.

## JURISDICTION

Plaintiff and defendant diversity supports jurisdiction of The U.S. District Court for the Eastern District of Pennsylvania.

## FACTUAL SUPPORT FOR CLAIMS

1.     February 4, 2013 the Wallaces executed West Chester, Chester County lawyer James S. Tupitza ("Tupitza") client agreement and paid Tupitza a retainer. Tupiza and his associate Julie D. Lathia, Esq. ("Lathia") together promptly entered and filed plaintiff Wallace post bench trial motions in the Wallace lawsuit against their former lawyer Klehr, Harrison, Harvey, Branzburg & Ellers, LLP ("Klehr"), C.C.P.Phil.Co. Pa., No. 3546 ("***Wallace v Klehr***") defended by Klehr's

1

insurer CNA for $20 million coverage against the Wallace claims (through CNA wholly owned subsidiaries Continental Corp. and Columbia Casualty Co. ("Columbia")).

2.      A summary judgment and bench trial final judgment in *Wallace v Klehr* dismissed the claims against Klehr and on June 7, 2013 Tupitza noticed Wallace appeal. The court ordered an Appellant Wallace Pa.R.C.P. 1925(b) Concise Statement of issues appealed by July 1, 2013.

3.      After failing to file the 1925(b) Statement by July 1st, Tupitza immediately filed it *nunc pro tunc* which the court denied.

4.      At Mr. Wallace instruction, Tupitza noticed another Wallace appeal and September 3, 2013 the C.C.P.Phil.Co. ordered a second Appellant Wallace Rule 1925(b) Statement.

5.      In September 2013 Lathia emailed her draft second 1925(b) Statement to Mr. Wallace and in her email promised she would timely file it.

6.      September 20, 2013 Lathia called and emailed Mr. Wallace stating that Mr. Tupitza stopped her from filing Appellant Wallace second 1925(b) Statement and the Wallace appeal was dismissed.

7.      Tupitza and Lathia never withdrew as plaintiff Wallace attorneys in *Wallace v. Klehr*.

8.      Late 2015 discovery by the *pro se* Wallaces in their suit against defendants Tupitza, et. al (to include CNA), Court of Common Pleas Chester County (C.C.P.C.P.) No. 2013-10242, ("*Wallace v. Tupitza*") produced a May 19, 2013 "CNA" policy contract with Tupitza (through CNA wholly owned subsidiaries Continental Corp. and Continental Casualty Co. ("Continental")) for $1 million coverage for each claim (the Wallaces pled three claims against Tupitza).

9.      The same late 2015 discovery produced Tupitza's August 1, 2013 email claim notice to CNA stating that Tupitza was liable to the Wallaces and that he also had a conflict of interest.

10.     The same late 2015 discovery produced a September 6, 2013 letter from CNA in Chicago on "CNA" stationary to Tupitza that begins, "Following our telephone discussion on September 3, 2013…" – the same day of the docketed, emailed court ordered second 1925(b) Statement – and

2

the CNA letter assured Tupitza that CNA will defend and insure Tupitza against any and all claims by the Wallaces

11.     When CNA and Tupitza talked September 3, 2013 and CNA sent its September 6th letter, CNA knew Tupitza was conflicted and that the Wallaces were relying on Tupitza to timely file the court ordered second Wallace 1925(b) Statement.

12.     CNA did defend Tupitza in *Wallace v. Tupitza* against intentional tort claims.

13.     The court in *Wallace v Tupitza* sustained defendant CNA preliminary objections January 5, 2015 finding lack of Pennsylvania jurisdiction of CNA, made final by order July 12, 2016.

14.     The court in *Wallace v Tupitza* by final summary judgment order July 11, 2016 dismissed the lawsuit regarding all parties by disagreeing with the Wallaces' original 2013 Pa.R.C.P. 1042.3 Certificate Of Merit As To Attorney Defendants that stated expert evidence regarding "acceptable professional standards" was not necessary in order to prosecute intentional tort claims against defendant Tupitza.

15.     The July 11, 2016 summary judgment order and opinion did not address the facts or merits of the actual claims against the defendants.

16.     The *Wallace v Tupitza* July 11, 2016 summary judgment order also summarily denied the Wallaces' timely 2015 motion for leave to amend their complaint, during discovery and before motions for summary judgment, with a new 1042.3 Certificate that would satisfy the court.

17.     Exh. **A** is the Wallaces' (cautionary) Pa.R.C.P. 1042.3 Certificate Of Merit that "an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude" that Tupitza failed to provide legal services of "acceptable professional standards" that "caused harm" to the Wallaces.

## CLAIMS

### COUNT I – Rest.2dTorts § 87 Concerted Intentional Tortious Conduct

18.    Plaintiffs incorporate all foregoing paragraphs as if fully set forth in this claim.

19.    Defendant CNA financial statement, with net worth in excess of $12 Billion, with the SEC incorporates all operations of its wholly owned subsidiaries Columbia and Continental who share with parent CNA corporate officers and employees in the same Chicago headquarters.

20.    Because of the material differences in financial risk, it is a conflict of interest for CNA, (whether through wholly owned subsidiaries) to insure the liability of a party and opposing lawyer in litigation, opposing parties in litigation, or insure the liability of opposing lawyers in litigation.

21.    Defendant CNA (whether through its wholly owned subsidiaries) intentionally, if by *willful blindness*, gave *assistance* or *encouragement* or by *mutual tacit understanding,* concerted with Tupitza, who CNA knew was conflicted, to maliciously breach his i) fiduciary duty, ii) manifest contractual duty as well as iii) Wallace instruction, and iv) promise to the Wallaces, detrimentally relied upon by the Wallaces, to file the court ordered second Wallace Rule 1925(b) Statement.

22.    CNA concert with Tupitza, who CNA knew was conflicted, was purposeful *with malice* to harm the Wallaces for the financial benefit of CNA by wrongfully causing dismissal of the Wallace appeal regarding their claims against Klehr insured by CNA for $20 million. *Qui sentit commodum sentire debet onus* – he who receives the benefit ought also to suffer the burden.

23.    WHEREFORE, the Wallaces demand judgment in their favor and against Defendant CNA for Rest.2d Torts § 876 concerted intentional tortious conduct *with malice* and for damages:

   i)   *actual reliance damages* of Wallace legal fees regarding *Wallace v Klehr* litigation totaling $720,419.07 plus prejudgment compound interest;[i] and

   ii)  CNA and Tupitza caused *emotional distress* to the Wallaces in excess of $150,000.00 plus prejudgment compound interest from September 2013; and

---

[i]    The Wallaces' legal fees: 1) $240,500.00 vs. Klehr plus compound interest from September 2013; 2) $158,540.04 fees to Klehr vs. PNC/Mercantile plus compound interest from 2007; and 3) Klehr claimed Wallace defense of $328,136.13 fees against PNC/Mercantile plus compound interest from 2004 (all these legal fees were evidenced without dispute in *Wallace v Klehr*)

iii) *punitive damages*, for *malicious intent* to harm the Wallaces, as deterrence to CNA and other insurers and *their insured lawyers* from similar outrageous, willful and wonton conduct that strikes at the core of the integrity of insurers and their insured lawyers as well as strikes at the core of public policy;[ii] and

ix) other relief this Court deems appropriate.

## COUNT II – Rest.2dTorts § 766 Intentional Interference with Contract Duty

24. Plaintiffs incorporate all foregoing paragraphs as if fully set forth in this claim.

25. Defendant CNA (whether through its wholly owned subsidiaries) intentionally, if by *willful blindness*, gave *assistance* or *encouragement* or by *mutual tacit understanding,* interfered with Tupitza's, who CNA knew was conflicted, i) fiduciary duty, ii) manifest contractual duty as well as iii) Wallace instruction, and iv) promise to the Wallaces, detrimentally relied upon by the Wallaces, to file the court ordered second Wallace Rule 1925(b) Statement.

26. CNA interference with Tupitza's, who CNA knew was conflicted, contractual duty was purposeful *with malice* to harm the Wallaces for the financial benefit of CNA by wrongfully causing dismissal of the Wallace appeal regarding their claims against Klehr insured by CNA for $20 million. *Qui sentit commodum sentire debet onus* – he who receives the benefit ought also to suffer the burden.

27. WHEREFORE, the Wallaces demand judgment in their favor and against Defendant CNA for Rest.2d Torts § 766 interference *with malice* with contractual duty and for damages as claimed above ¶ 23.

## COUNT III – Rest.2dTorts § 312 Intentionally Causing Agent to Violate Duty

28. Plaintiffs incorporate all foregoing paragraphs as if fully set forth in this claim.

29. Rest.2d Torts § 312 comment d. *Tort or restitutional recovery.*

---

[ii]    Punitive damages for malicious conduct shall be based upon CNA's "wealth" in order to be an effective deterrence to CNA and other insurers and their insured lawyers from engaging in similar intentional malicious conduct. The net worth of CNA is in excess of $12 Billion (courts, including the U.S.S.C., have generally found 10% of wealth a just and fair punitive deterrence).

A person who intentionally causes a[n]...agent to violate a duty to the principal is subject to liability in tort for the harm he has caused the principal...

30.     Defendant CNA (whether through its wholly owned subsidiaries) intentionally, if by *willful blindness*, gave *assistance* or *encouragement* or by *mutual tacit understanding,* caused Tupitza, who CNA knew was conflicted, to violate his agent i) fiduciary duty, ii) manifest contractual duty as well as iii) Wallace instruction, and iv) promise to the Wallaces, detrimentally relied upon by the Wallaces, to file the court ordered second Wallace Rule 1925(b) Statement.

31.     CNA caused Tupitza, who CNA knew was conflicted, to violate his agent duty *with malice* to harm the Wallaces for the financial benefit of CNA by wrongfully causing dismissal of the Wallace appeal regarding their claims against Klehr insured by CNA for $20 million. *Qui sentit commodum sentire debet onus* – he who receives the benefit ought also to suffer the burden.

32.     WHEREFORE, the Wallaces demand judgment in their favor and against Defendant CNA for Rest.2dTorts § 312 Intentionally *with malice* Causing Agent to Violate Duty and for damages as claimed above ¶ 23.

## COUNT IV – Liability in Rest.3d Agency § 2.06

33.     Plaintiffs incorporate all foregoing paragraphs as if fully set forth in this claim.

34.     Upon the August 1, 2013 Tupitza policy claim, CNA had "***right of control***" of Tupitza, who CNA knew was conflicted, regarding the Wallaces.

35.     CNA (whether through wholly owned subsidiaries) had ***the right*** to:
   1) cause Tupitza, who CNA knew was conflicted, to withdraw from *Wallace v. Klehr*; or
   2) cause Tupitza to timely file the court ordered second 1925(b) Statement; or
   3) cause Tupitza to not file the court ordered second 1925(b) Statement.

36.     Rest.3d Agency § 2.06 provides that CNA is liable for the actions of Tupitza, whether or not acting with CNA authority or encouragement, that purposefully *with malice* harmed the

Wallaces for the financial benefit of CNA by wrongfully causing dismissal of the Wallace appeal regarding their claims against Klehr insured by CNA for $20 million. *Qui sentit commodum sentire debet onus* – he who receives the benefit ought also to suffer the burden.

37.    WHEREFORE, the Wallaces demand judgment in their favor and against Defendant CNA in Rest.3d Agency § 2.06 and for damages and harm as claimed above ¶ 23.

**Plaintiffs demand a trial by jury of twelve persons on all claims.**

Respectfully submitted,

BONNIE CRUICKSHANK-WALLACE

Dated: July  2, 2018

WILLIAM WALLACE

BONNIE CRUICKSHANK-WALLACE
WILLIAM WALLACE                              *Plaintiffs pro se*
10 Crestview Dr.
Parkesburg, PA 19365
610-857-4934
*will21921@yahoo.com*

# EXHIBIT

# A

BONNIE CRUICKSHANK-WALLACE
WILLIAM WALLACE                              *Plaintiffs pro se*
10 Crestview Dr.
Parkesburg, PA 19365
610-857-4934
*will21921@yahoo.com*

| | | |
|---|---|---|
| BONNIE CRUICKSHANK-WALLACE | : | UNITED STATES DISTRICT COURT |
| and | : | FOR THE EASTERN DISTRICT OF |
| WILLIAM WALLACE | : | PENNSYLVANIA |
| Plaintiffs | : | Civil Action No. |
| | : | |
| v. | : | |
| CNA FINANCIAL CORPORATION | : | |
| Defendant | : | |

### Pa.R.C.P. 1042.3 CERTIFICATE OF MERIT AS TO ATTORNEY
### JAMES S. TUPITZA, ESQ.

We, Bonnie Cruickshank-Wallace and William Wallace, Plaintiffs *pro se*, certify that:

☒ an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by JAMES S. TUPITZA, ESQ. ("Tupitza") in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;
AND/OR

☐ the claim that Tupitza deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR
☐ expert testimony of an appropriate licensed professional is unnecessary.

Respectfully submitted,

BONNIE CRUICKSHANK-WALLACE

Dated: July 2, 2018

WILLIAM WALLACE

1